**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

L.H., a minor, by and through her
parents and natural guardians
T.H. and B.H.,

    Plaintiffs,

  vs.

RICE ENTERPRISES, LLC,
d/b/a MCDONALD'S, McDONALD'S
USA, LLC, and MCDONALD'S
CORPORATION,

    Defendants.

CIVIL DIVISION

G.D. No: 21-11435

**COMPLAINT**

Code:

Filed on behalf of:

L.H., a minor, by and through her parents and
natural guardians, T.H. and B.H.

Counsel of Record for this Party:

ALAN H. PERER, ESQUIRE
Pa. I.D. No. 23603

SPK – THE LAW FIRM OF SWENSEN &
PERER
Firm No. 262
310 Grant Street, Suite 1400
Pittsburgh, PA 15219
Phone: (412) 281-1970
Fax: (412) 281-2808
aperer@spkpowerlaw.com

FILED
2021 SEP 21 AM 9: 06
DEPT. OF COURT RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY PA

1

T112628
21 September 2021
9:5:31
GD-21-011435

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

L.H., a minor, by and through her
parents and natural guardians
T.H. and B.H.,

        Plaintiffs,

    vs.

RICE ENTERPRISES, LLC,
d/b/a MCDONALD'S, McDONALD'S
USA, LLC, and MCDONALD'S
CORPORATION,

        Defendants.

CIVIL DIVISION

G.D. No:

### NOTICE TO DEFEND

YOU HAVE BEEN SUED IN COURT.  If you wish to defend against the claims set forth in the following pages, you must take action within TWENTY (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you. YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Allegheny County Bar Association
400 Koppers Building
436 Seventh Avenue
Pittsburgh, Pennsylvania 15219
412-261-6161

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| L.H., a minor, by and through her parents and natural guardians T.H. and B.H., | CIVIL DIVISION |
| | G.D. No: |
| Plaintiffs, | |
| vs. | |
| RICE ENTERPRISES, LLC, d/b/a MCDONALD'S, McDONALD'S USA, LLC, and MCDONALD'S CORPORATION, | |
| Defendants. | |

### COMPLAINT

AND NOW Comes Plaintiff, L.H., a minor, by and through her parents and natural guardians, T.H. and B.H., by and through their counsel, Alan H. Perer, Esquire, and SPK – The Law Firm of Swensen & Perer, and file the within Complaint, averring as follows:

#### *Introduction*

1.      McDonald's is one of the largest employers in the country, advertising itself as "America's best first job," and yet it creates and permits a sexually hostile work environment for its employees from the top down, as evidenced by former-CEO Steve Easterbrook's recent termination for an inappropriate relationship with a subordinate in violation of company policy (and related allegations regarding other sexual relationships with other McDonald's employees) and conduct taking place throughout its thousands of restaurants.

2.      McDonald's employees across the country, many of them teenagers such as Plaintiff, are telling their stories of routine and severe sexual harassment and abuse.[1]

---

[1] *See, e.g.,* Aine Cain, *Gretchen Carlson Spotlighted McDonald's Workers Speaking Out Against Sexual Harassment at the Fast Food Giant in Her New Series,* Business Insider (Jan. 15, 2019); *see also* Taja Davis, *Tucson Teen Takes on McDonald's; Sexual Harassment Claims,* KGUN 9 (May 22, 2019), https://kgun9.com/news/local-news/tucson-

3.     These McDonald's employees describe swift and severe retaliation for objecting to such mistreatment.[2]

4.     Despite being on notice of pervasive problems of sexual harassment nationwide, McDonald's fails to properly train its staff and managers and does nothing to ensure that what little training is provided actually takes place or is effective in preventing harassment.

5.     Upon information and belief, McDonald's provides inadequate training to managers as to responding to sexual harassment complaints and fails to hold accountable those managers who allow harassment to continue.

6.     McDonald's fails to properly screen its job applicants or monitor its employees.

7.     These circumstances, which McDonald's allowed to persist in its restaurants throughout the country, caused the injuries and damages to Plaintiff described herein.

### *Administrative Exhaustion*

8.     Contemporaneous with the filing of the present Complaint, Plaintiffs will be filing an administrative charge with the Pennsylvania Human Relations Commission (PHRC).

9.     Plaintiffs will move to amend to add companion harassment, discrimination, and hostile work environment claims under the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 *et seq.* after the claims have been administratively exhausted.

### *The Parties*

10.    Plaintiff, L.H., is a minor individual who resides in Allegheny County, Pennsylvania.

---

teen-takes-on-mcdonalds-sexual-harassment-claims; *see also* Maria Minor, *Here's Why McDonald's Has A Sexual Harassment Problem,* Forbes (Mar. 4, 2021), https://www.forbes.com/sites/mariaminor/2021/03/04/heres-why-mcdonalds-has-a-sexual-harassment-problem/.
[2] *See, e.g.,* Christopher Yee, *Employee to Feds: Sexual Harassment Runs Rampant at Monterey Park McDonald's,* Pasadena Star-News (May 24, 2019), https://www.pasadenastarnews.com/2019/05/24/employee-to-feds-sexual-harassment-runs-rampant-at-monterey-park-mcdonalds/.

11.     Plaintiffs, T.H. and B.H., are adult individuals who reside in Allegheny County, Pennsylvania, and are the parents of Plaintiff, L.H.

12.     Defendant, Rice Enterprises, LLC, is a Pennsylvania-registered limited liability company, doing business as "McDonald's," that operates eight (8) McDonald's restaurants in Allegheny County (Brentwood, Upper St. Clair, Northside, Mt. Oliver, Pleasant Hills, Scott Township, South Park, and West Mifflin).

13.     Defendant, Rice Enterprises, LLC has a registered address of 2522 Forest Brook Drive, Upper Saint Clair, Allegheny County, Pennsylvania 15241.

14.     Defendant, McDonald's USA, LLC is a Delaware limited liability company that has its principal place of business in Illinois, and operates restaurants in all 50 states.

15.     Defendant, McDonald's Corporation, is a Delaware corporation that has its principal place of business in Illinois, and operates restaurants in all 50 states.

16.     Defendants, McDonald's USA, LLC and McDonald's Corporation (collectively, "McDonald's Corporate Defendants"), share a registered address of 251 Little Falls Drive, Wilmington, Delaware, 19808.

17.     The McDonald's Corporate Defendants contracts with numerous franchisees that jointly operate McDonald's restaurants throughout Pennsylvania and Allegheny County, including Defendant Rice Enterprises, LLC.

18.     Together, all Defendants jointly operated the McDonald's restaurant in question during the relevant period and jointly employed all employees, including Plaintiff and the managerial staff.

19.     Defendant Rice Enterprises, LLC acts as an agent of the McDonald's Corporate Defendants, and/or the McDonald's Corporate Defendants hold out Rice Enterprises, LLC as their agent.

20.     The McDonald's Corporate Defendants exercise strict control over the working conditions of employees at McDonald's franchised restaurants, including at restaurants operated by Defendant Rice Enterprises, LLC, with respect to matters such as Human Resources policies, the physical work environment, required worker and manager training, and discipline and termination of employees.

21.     The McDonald's Corporate Defendants also provide guidance to franchisees, including Defendant Rice Enterprises, LLC, on training about and prevention of sexual harassment and reporting and investigating sexual harassment complaints, but that guidance is entirely inadequate and ineffective.

22.     For reasons set forth herein, Plaintiffs reasonably believed that the minor Plaintiff worked for the global McDonald's corporation headquartered in Illinois, i.e., the McDonald's Corporate Defendants.

23.     Plaintiffs' reasonable belief was grounded upon the fact that the minor Plaintiff applied through a McDonald's website, wore a McDonald's uniform, served McDonald's products, and followed McDonald's policies and practices.

24.     Plaintiffs reasonably believed that the minor Plaintiff was working for a large corporate employer with adequate resources dedicated to Human Resources issues, including the prevention of sexual harassment and resolution of complaints.

25.     Plaintiffs reasonably believed that the minor Plaintiff was working for a large corporate employer that would provide a safe, well-controlled, well-monitored working environment where she would not be subject to sexual harassment and assault.

26.     The McDonald's Corporate Defendants are liable for the acts of Rice Enterprises, LLC because it was the apparent agent of the McDonald's Corporate Defendants.

### *Factual Allegations*

27.     On or about October 25, 2020, when she was 14 years old, Plaintiff, L.H., submitted an online job application to McDonald's via the McDonald's Careers website at https://careers.mcdonalds.com/us.

28.     Upon visiting the McDonald's Careers website, Plaintiff was presented with clear signs that she was applying to the global McDonald's corporation (as opposed to an individual franchisee).

29.     The McDonald's Careers website is not franchise-specific; applicants obtain information about "McDonald's" as a global company and not information about individual franchisee restaurants.

30.     The McDonald's Careers website sets forth the "Benefits & Perks" applicable to all McDonald's employees regardless of location (i.e., employee safety procedures, competitive benefits, flexible scheduling, world-class training, employee rewards, and tuition assistance).

31.     The McDonald's Careers website outlines "Archways to Opportunity" applicable to all McDonald's employees regardless of location, a program that promises to help employees finish their high school diplomas, master English language skills, earn their college degrees, and assist with career advice.

32.    The McDonald's Careers website sets forth "Our Values" applicable to all McDonald's employees regardless of location, stating that "[o]ur values drive our culture and shape our beliefs, our priorities and our actions.  They influence the decisions we make, how we treat one another and how we show up as a brand to the world."  The website lists the McDonald's values: service, inclusion, integrity, community, and family.

33.    Finally, the McDonald's Careers set forth its "Diversity & Inclusion" initiative, stating that McDonald's employees "feel[] their culture, identity, and experiences are valued and respected."

34.    Via the McDonald's Careers website, Plaintiff searched for a "Crew Member" position within the Pittsburgh area, and the website returned a list of job openings at various locations.

35.    Plaintiff applied for a "Crew Member" position at a location that was convenient for her and was later contacted via text message by a hiring manager at the McDonald's location at issue in this Complaint (operated by Defendant Rice Enterprises, LLC).

36.    Plaintiff was hired and instructed to report to work two days later (i.e., October 27, 2020).

37.    Plaintiff was told that she would be undergoing a three-day orientation session before beginning work.

38.    On the first day of that orientation, a 17-year-old girl who had worked at the McDonald's location at issue for less than one year provided Plaintiff with limited training.

39.    The first day of training consisted only a training video on how to be a "presenter" (i.e., a McDonald's employee  who hands out food at the drive-through).

40.     On the second and third day of orientation, Plaintiff was provided little or no training and was essentially left alone.

41.     At no time did Plaintiff receive any training or watch any training videos relative to sexual harassment.

42.     Plaintiff was not trained or instructed on how to report incidents of sexual harassment or who would receive such reports.

43.     Plaintiff was not provided with a policy on sexual harassment or any reporting procedures for sexual harassment.

44.     Plaintiff was not provided any information regarding Human Resources personnel.

45.     Plaintiff began working at the McDonald's restaurant at issue, initially without incident.

46.     In January 2021, the manager who supervised the shift Plaintiff worked was replaced with a new manager, Walter A. Garner.

47.     Unbeknownst to Plaintiff, Garner was hired and retained by McDonald's despite that as of 2004 he was registered as a "Lifetime Offender" on Megan's Law Public Report for a 2003 conviction for Aggravated Indecent Assault. Garner had pled guilty to sexually assaulting a 10-year-old girl and had served time in prison for said conviction.

48.     Garner began sexually harassing Plaintiff almost immediately after they began working together on the same shift.

49.     At first, beginning in mid-January 2021, Garner began verbally harassing Plaintiff, telling her that he wanted her "to be his happy meal" or making sexual inuendoes about a spilled milkshake.

50.     Other employees and managers overheard and were aware of Garner's comments.

51.     Garner's comments became both more overt and more frequent.

52.     Garner openly told Plaintiff she was pretty.

53.     Garner made comments about Plaintiff's body, especially her butt.

54.     Garner repeatedly asked to see Plaintiff outside of work.

55.     Then, Garner began touching Plaintiff inappropriately, including brushing up against her while walking by, touching her hair, and touching other parts of her body.

56.     Plaintiff told Garner to stop, but he said she was being uptight and should loosen up and then continued the harassment and abuse.

57.     The harassment and abuse caused Plaintiff severe emotional distress and anxiety.

58.     At approximately this same time, Garner was also abusing and harassing other minor McDonald's employees, including the 17-year-old girl who trained Plaintiff during the initial orientation and another young girl at the same McDonald's location.

59.     Garner exhibited similar conduct to those other girls (i.e., comments about their bodies and about getting together outside of work, touching them inappropriately during work hours).

60.     The employees worked in close proximity to one another, so Plaintiff witnessed and was exposed to the harassing conduct even when it was directed at other employees.

61.     The harassment experienced directly by Plaintiff and the knowledge and awareness of pervasive incidents of sexual harassment contributed to and created a hostile work environment at the McDonald's location in question. A reasonable person would perceive such constant and open harassment of female employees as creating an employment environment that was intimidating, hostile, and/or offensive toward women.

62.     The work environment at the McDonald's restaurant at issue was permeated with sexual harassment so severe and/or pervasive as to make the restaurant an objectively abusive and hostile workplace for women, thereby altering the terms of their employment.

63.     Plaintiff and the other two girls spoke about the harassment they were experiencing.

64.     After the three girls spoke about the harassment at the worksite, they were contacted by the hiring manager who had interviewed Plaintiff for the position.

65.     Plaintiff and the other two girls informed the hiring manager by telephone about the harassment they were experiencing and the identity of the manager.

66.     McDonald's did not investigate their complaints beyond the first telephone call with the hiring manager.

67.     McDonald's did not take any steps to stop the harassment.

68.     Plaintiff was unaware of any Human Resources Department outside of the regular chain of command at the McDonald's location in question.

69.     Upon information and belief, Defendant Rice Enterprises, LLC does not maintain a separate Human Resources Department, and although the McDonald's Corporate Defendants do maintain a Human Resources Department, that Department refuses to assist employees at franchise restaurants.

70.     Garner continued to work on the same shift as Plaintiff and continued his harassment.

71.     In approximately mid-February 2021, during a work shift, Plaintiff went into the bathroom during her break because she was not feeling well. Garner entered the bathroom after her, grabbed Plaintiff and overpowered her, pulled off her McDonald's uniform, and raped her.

72.     This incident caused Plaintiff to go into shock.

73.     Plaintiff tried to forget the incident and continued to work for McDonald's on the same shift as Garner.

74.     At this point, Plaintiff's emotional distress and anxiety increased dramatically.

75.     Subsequently, there was an unrelated alleged theft from the cash drawer at the McDonald's location at issue.

76.     This theft was investigated far more thoroughly than Plaintiff's previous complaints of harassment.

77.     Rice (the owner of Defendant Rice Enterprises, LLC), the hiring manager, and another management-level McDonald's employee viewed surveillance video from inside the McDonald's restaurant to investigate the theft.

78.     While watching that video, Rice and the two managers coincidentally viewed a section of the video that showed Garner groping Plaintiff.

79.     Upon information and belief, McDonald's management spoke to Garner about the conduct viewed on video but did not discipline or fire him.

80.     Garner was then emboldened and increased his harassment of Plaintiff while they were working together.

81.     Garner attempted to have sex with Plaintiff inside the kids' area at the McDonald's location in question, but Plaintiff refused.

82.     Garner pressured Plaintiff to meet with him after work, where he again used pressure and influence to coerce Plaintiff into sexual acts.

83.     Plaintiff dreaded going to work but continued to work because it was important to her to continue to gain experience and because it gave her some financial independence.

84.     Subsequently, Garner showed some photographs of himself and Plaintiff to another minor McDonald's employee who he was targeting for harassment and abuse.

85.     That girl told her school administration about the harassment and, unlike McDonald's, that school took immediate and reasonable action by calling the police.

86.     In mid-April, 2021, the police arrested Garner and charged him with Aggravated Indecent Assault (felony), Indecent Assault Without Consent of Other, Endangering Welfare of Children, and Corruption of Minors (misdemeanors).

87.     Defendant Rice Enterprises, LLC learned about the arrest, and only then did it terminate Garner's employment.

88.     Garner's sexual harassment and assaults continued at the worksite until he was arrested and terminated in April 2021.

89.     Rice and managerial staff met with Plaintiff and apologized to her.

90.     Plaintiff was then showed training videos by McDonald's management, which instructed her for the first time about the company's position on sexual harassment and how to report incidents of harassment.

91.     McDonald's management knew about the harassment of Plaintiff and her co-workers and was aware of the sexually hostile work environment at the restaurant in question but took no action to discipline Garner or otherwise prevent the harassment.

92.     McDonald's failure to take action to stop the harassment signaled that harassment was permitted and that harassers would not be held accountable.

93.     The McDonald's Corporate Defendants are aware of unchecked sexual harassment at its restaurants nationwide, due to the many complaints and lawsuits regarding such conduct.

94.     Despite being on notice of systemic sexual harassment, McDonald's failed to take the institutional action necessary to prevent sexual harassment of its workers.

95.     This inaction by Defendants facilitated a culture of sexual harassment and caused Plaintiff to be subjected to sexual harassment and a hostile work environment.

*McDonald's Corporate Structure—Joint Employer and Apparent Authority*

96.     The McDonald's Corporate Defendants operate, franchise, and service a restaurant system that prepares, assembles, packages, and sells a limited menu of McDonald's foods under the "McDonald's System."

97.     The McDonald's System is designed to promote uniformity of operations.

98.     Upon information and belief, the McDonald's Corporate Defendants have franchise agreements with franchisees, such as Defendant Rice Enterprises, LLC, that require Rice Enterprises LLC to follow the McDonald's System by complying with all standards, business policies, practices and procedures set forth by the McDonald's Corporate Defendants.

99.     Pursuant to those agreements, Rice Enterprises LLC was required to follow the policies provided by the McDonald's Corporate Defendants relating to operations, inventory, accounting, management, and advertising and to submit to regular comprehensive site inspections and computer monitoring.

100.    Upon information and belief, the franchise agreements between the McDonald's Corporate Defendants and Defendant Rice Enterprises, LLC gives significant control to the McDonald's Corporate Defendants over restaurant operations, the physical work environment, working conditions, personnel training, discipline and firing of employees, marketing and brand use, equipment, and the finances of franchisees' restaurants, and give the McDonald's Corporate Defendants unlimited authority to inspect restaurants to monitor workplace conditions, including

14

labor conditions, and to ensure compliance with the standards and policies of the McDonald's Corporate Defendants.

101.    The McDonald's Corporate Defendants maintain national franchise standards to which their franchisees must adhere, and that affect almost every aspect of the restaurants' function, including practices and policies relating to crew members' labor conditions. Upon information and belief, Defendant Rice Enterprises, LLC is subject to these national franchise standards, which set work rules and assignments as well as conditions of employment including compensation, benefits, and hours.

102.    On information and belief, the McDonald's Corporate Defendants supervise day-to-day operations via a "District Manager," and inspect and evaluate all franchisees, including Defendant Rice Enterprises, LLC, to ensure compliance with their franchise standards governing recruitment, development, training, and retention of qualified personnel.

103.    Upon information and belief, through the McDonald's Corporate Defendants' inspections, they will identify specific employees who should be disciplined.

104.    The McDonald's Corporate Defendants exercise control over hiring, including by maintaining a nationwide website ("McDonald's Careers," discussed above) to which all applicants must apply to work at any McDonalds, including, upon information and belief, restaurants operated by Defendant Rice Enterprises, LLC.

105.    On information and belief, the McDonald's Corporate Defendants also dictate staffing levels, which in turn impacts hiring and firing decisions.

106.    Upon information and belief, during the relevant time period, the McDonald's Corporate Defendants did not mandate training, including but not limited to sexual harassment training, to General Managers, instead making such training optional.

107.    Upon information and belief, the optional training provided to General Managers fails to adequately prepare those General Managers to prevent harassment, investigate reports of sexual harassment, or impose appropriate remedial measures.

108.    More recently, the McDonald's Corporate Defendants have mandated training to General Managers, thereby demonstrating the McDonald's Corporate Defendants' control over the franchisee restaurants.

109.    Upon information and belief, beginning in January 2022, the McDonald's Corporate Defendants will require sexual harassment training at all its restaurants, including franchisee locations, and will require all restaurants to gather feedback from employees.  This training program will include McDonald's Corporate-level evaluations gauging whether employees feel physically and emotionally safe at work

110.    The McDonald's Corporate Defendants and Defendant Rice Enterprises, LLC, jointly employed Plaintiff.

111.    Plaintiff applied through the nationwide McDonald's Careers website.

112.    The application process led Plaintiff to reasonably believe she was applying for a job with the McDonald's Corporate Defendants.

113.    When Plaintiff began working at the McDonald's restaurant in question, she reasonably believed she was working for the McDonald's Corporate Defendants because she was unaware of the McDonald's franchising system, the store was branded in the same manner as all other McDonald's restaurants, she wore the same uniform as other McDonald's employees nationwide, and she was unaware that Rice Enterprises, LLC owned the restaurant in question.

114.    Upon information and belief, the McDonald's Corporate Defendants' involvement in the operations of the McDonald's restaurant in question, including the hiring process, on-site

inspections, setting policies, and providing logos and branding, led Plaintiff to reasonably believe that the restaurant where she worked was operated and was authorized to operate by the McDonald's Corporate Defendants.

115.    The McDonald's Corporate Defendants are liable for the acts of Defendant Rice Enterprises, LLC because Rice Enterprises, LLC was the apparent agent of the McDonald's Corporate Defendants.

*Cause of Action*

**COUNT I**
**PLAINTIFF V. ALL DEFENDANTS**
**NEGLIGENCE**

116.    Plaintiff hereby incorporates all preceding paragraphs by reference.

117.    The negligence, carelessness, recklessness and/or other liability-producing conduct on the part of Defendants, consisted of, *inter alia:*

a.    Failing to adequately train Plaintiff on how to identify, address, and report incidents of sexual harassment, sexual assault and/or battery, and sexually hostile work environment;

b.    Failing to adequately perform screening and/or background checks on Garner prior to hiring, where such screening and/or background checks would have revealed that said manager was listed as a Lifetime Offender on the Megan's Law registry and had previously been convicted of sexually abusing a 10-year-old girl;

c.    Failing to adequately supervise Garner, thereby ensuring that he had unrestricted access to minor victims;

d.    Continuing to employ Garner4 and allowing him to supervise and have unrestricted access to minor victims when Defendants had information of his prior sexual harassment of employees and/or of his prior criminal acts;

e.    Failing to properly address Plaintiff's complaints of harassment and abuse;

f.    Failing to properly address other employees' complaints of harassment and abuse;

17

g.  Failing to publish and distribute policies and procedures on sexual harassment and the reporting thereof;

h.  Other acts or omissions yet to be discovered.

118.  As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages including:

a.  Non-economic damages for injuries such as emotional distress, harm to reputation, embarrassment, humiliation, inconvenience, indignity, outrage, disappointment, and other consequential injuries;

b.  Non-economic damages for physical injury to Plaintiff caused by the sexual assault and/or battery;

c.  Economic damages based on earning capacity, both past and future;

d.  Attorney fees and costs; and

e.  Other damages to be determined.

119.  Based on the intentional, willful, wanton, outrageous, reckless and deliberately indifferent conduct of the Defendants, which directly and proximately caused Plaintiff's injuries, Plaintiffs assert a claim for punitive damages.

WHEREFORE, Plaintiffs request judgment against Defendants in an amount in excess of the jurisdictional limits for arbitration, plus costs. **JURY TRIAL DEMANDED.**

Respectfully submitted,

Alan H. Perer, Esquire
Pa. I.D. No. 23603
SWENSEN & PERER
Firm No. 262
One Oxford Center, Suite 2501
Pittsburgh, PA 15219
Phone: (412) 281-1970
Fax:    (412) 281-2808
aperer@spkpowerlaw.com

## <u>VERIFICATION</u>

We, ███████████ and ████████ verify that we are the Plaintiffs in this action

and guardians to Minor Plaintiff and that the statements made in the foregoing **COMPLAINT** are

true and correct to the best of my knowledge, information and belief. We understand that false

statements herein are made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn

falsification to authorities.


9/17/21
Date                                        ████████████████

9/17/21
Date                                        ████████████████

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania.: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted By: *Plaintiff's Attorney*

Signature: _____

Name: *Alan H. Perer, Esquire*

Attorney No.: *23603*

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

_____ Allegheny _____ **County**

| For Prothonotary Use Only: |
|---|
| Docket No: |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| L.H., a minor, by and through her parents and natural gua | Rice Enterprises, LLC, d/b/a McDonald's, McDonalds's L |

**Are money damages requested?** ☒ Yes ☐ No

Dollar Amount Requested: (check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes ☒ No

**Is this an *MDJ Appeal*?** ☐ Yes ☒ No

Name of Plaintiff/Appellant's Attorney: Alan H. Perer, Esq.

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE**. If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☒ Other:
  Negligence - hiring and supervision

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other:
  _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional:
  _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
  _____
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
  _____
- ☐ Other:
  _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:
  _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
  _____
- ☐ Zoning Board
- ☐ Other:
  _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other:
  _____

*Updated 1/1/2011*